Bianca Kaylene Ruiz
*Self-Represented Debtor*
1353 West Bison Drive
Riverton, Utah 84065
808-250-3396
biancakayleneruiz@gmail.com



FILED US Bankruptcy Court-UT
DEC 27 2022 AM11:21

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>**BIANCA KAYLENE RUIZ**<br>Debtor. | Bankruptcy No. 21-24823<br>Chapter 7<br>Judge William T. Thurman |

## RESPONSE AND OBJECTIONS TO TRUSTEE'S:
## (1) MOTION TO APROVE SETTLEMENT, AND
## (2) MOTION TO TURN OVER PROPERTY

Debtor Bianca Ruiz (the "Debtor") moves this Court for an order denying the Trustee's 12-08-2022 *Motion to Turn Over Property*,[1] and an order denying the Trustee's 12-20-2022 *Motion to Approve Settlement*.[2]

This opposition is supported by the attached Legal Argument, the *Debtor's Motion for Judicial Notice #2* ("Judicial Notice 2"), the Debtor's 10-20-2022 *Motion for Judicial Notice* ("Judicial Notice 1") the files and records in this case, and any evidence and argument as may be presented prior to or at the time of hearings on the Trustee's Motions.

---

[1] Doc. #111.
[2] Doc. #115.



1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................4

INTRODUCTION ...........................................................................6

LEGAL ARGUMENT .......................................................................8

I.     THE ESTATE IS ONLY ENTITLED TO $1,168 OF THE AUDI'S
EQUITY. ...................................................................................8

     A.     The Estate's Interest Excludes The $4,013 Lien Valid as of the
Petition Date. ................................................................9

     B.     The Estate's Interest Excludes the $3,000 Exemption. ...................10

     C.     The Estate's Interest Excludes Post-Petition Funds/Assets. ...........10

     D.     Funds/Assets/Interests Traceable to an Exempt Source Retain The
Exempt Character. ..........................................................11

     E.     The Estate's Interest Excludes the $4,013 Post-Petition Payments
Made With Exempt Support Income. ...................................14

II.     THE SUBARU IS COMMUNITY PROPERTY. .........................................16

     A.     The Non-Debtor Spouse's Representations to this Court. ................17

     B.     The Non-Debtor Spouse Admitted Under Penalty of Perjury That
the Subaru is Not His Separate Property. ..............................17

     C.     California Law Defines the Property Rights of Debtor and Non-
Debtor Spouse. ..............................................................18

     D.     Absent A Written Agreement, Property Acquired By Married
Persons Before the Date of Separation Is Community Property
Regardless of Title. ........................................................20

     E.     The Subaru Was Purchased Before Debtor and the Non-Debtor
Spouse's Date of Separation. ............................................22

III.   PROPERTY OF THE ESTATE ............................................................23

    A.   All Community Property of the Debtor and the Non-Debtor Spouse
Are Liable for the Claims Against Debtor. ......................................23

IV.   VALUATION OF THE ESTATE'S INTEREST IN THE PROPERTY. ......25

    A.   The Proper Date of Valuation is 11-10-2021. ...................................25

    B.   The Estate's Interest Excludes Valid Liens as of the Petition Date,
Properly Applied Exemptions, Post-Petition Funds/Assets, And
Equity Traceable to an Exempt Source.............................................26

V.   THE TRUSTEE'S MOTION FOR TURNOVER OF THE AUDI WILL
NOT RESULT IN A MEANINGFUL DISTRIBUTION TO ESTATE
CREDITORS. ..................................................................................................26

    A.   The Estate's Interests In The Audi Is Only $1,168. ..........................27

    B.   The Trustee Hired Counsel To Collect the $1,168 After Refusing to
Settle With Debtor Outside of Court. .................................................27

    C.   A Trustee is not Authorized to Administer an Asset That Will Not
Result in a Meaningful Distribution to the Estate. ...........................28

    D.   Debtor Counters Trustee's Motion to Turnover The Vehicle With a
Payment Negotiation of $1,168. ........................................................29

VI.   THE SETTLEMENT AGREEMENT IS UNENFORCEABLE, UNJUST,
AND PREJUDICES THE ESTATE'S CREDITORS. .................................30

    A.   The Non-Debtor Spouse Cannot Convey to the Estate That Which
The Estate Already Owns – His Interests In The Audi. ..................31

    B.   The Non-Debtor Spouse Cannot Waive the $4,013 78B-5-
505(1)(a)(vi),(vii) Exemption in the Audi Equity By Conveyance to
the Estate. ...........................................................................................31

CONCLUSION ......................................................................................................33

PROPOSED ORDER ............................................................................................34

CERTIFICATE OF SERVICE .............................................................................35

EXHIBIT 1 ............................................................................................................36

# TABLE OF AUTHORITIES

<u>Cases</u>

*Butner v. United States* (1979) 440 U.S. 48 ............................................................18

*Harris v. Viegelahn*, 575 U.S. 510 (2015) ....................................................... 11, 26

*In re Brace* (2020) 9 Cal.5th 903. ............................................................... 16, 21, 22

*In re Chernushin*, 911 F.3d 1265 (10th Cir. 2018).................................... 10, 11, 26

*In re Godfrey*, 386 B.R. 339 (Bankr. D. Utah 2008)................................................11

*In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (B.A.P. 10th Cir. 1997) ............17

*In re Mantle*, 153 F.3d 1082 (9th Cir. 1998) ...........................................................24

*In re Marriage of Valli* (2014) 58 Cal.4th 1396 ............................................... 20, 21

*In re Marshall*, 550 F.3d 1251 (10th Cir. 2008) .....................................................18

*In re Neiheisel*, 32 B.R. 146 (Bankr. D. Utah 1983) ..............................................11

*In re Smith*, 201 P.3d 1001, 2009 U.T. 3 (Utah 2009) ...........................................13

*In re Smith*, BAP No. UT-07-065 (B.A.P. 10th Cir. Feb. 24, 2009) ......................13

*In re Villescas*, 623 B.R. 223 (Bankr. D. Utah 2021) ........................... 7, 12, 13, 26

*Johnson v. Fankell*, 520 U.S. 911 (1997) ................................................................19

*Lezine v. Security Pacific Fin. Services, Inc.* 14 Cal.4th 56 (1996) ......................24

*Owen v. Owen*, 500 U.S. 305 (1991) ..........................................................................9

*Russell M. Miller Co. v. Givan*, 325 P.2d 908 (Utah 1958) ...................................11

*Shore v. Shore* (1954) 43 Cal.2d. 677 ......................................................................19

*Wankier v. Crown Equipment Corp.*, 353 F.3d 862 (10th Cir. 2003) ...................20

## Statutes

### United States Code, Title 11

§301(a) ....................................................................................10
§330(a)(4)(A) .........................................................................27
§363(b) ...................................................................................28
§506(d)(2) ................................................................................9
§522 .......................................................................................10
§522(a)(2) ...............................................................................25
§522(e) ...................................................................................32
§541(a) ................................................................. 9, 10, 23, 25
§541(a)(2) ............................................................. 17, 24, 31
§541(d) .....................................................................................9
§542(a) ...................................................................................29
§704(a)(1) ...............................................................................28

### California Evidence Code

§662 ................................................................................ 21, 22

### California Family Code

§760 ........................................................................... 20, 21, 22
§770 .......................................................................................20
§771 .......................................................................................20
§910 .......................................................................................24
§2100(c) .................................................................................18
§2556 .....................................................................................19

### Utah Code Annotated

§78B-5-5 .................................................................................12
§78B-5-505(1)(a)(vi) ........................................................ 12, 14, 32
§78B-5-505(1)(a)(vii) ....................................................... 12, 14, 32
§78B-5-505(1)(a)(xiv) .............................................................13
§78B-5-506(3)(b) ..............................................8, 10, 12, 25, 27
§78B-5-507(2) .............................................................. 12, 14
§78B-5-509 .............................................................................32

## Other Authorities

Handbook for Chapter 7 Trustees ............................................. 28, 29

## INTRODUCTION

On November 10, 2021 (the "Petition Date"), Debtor filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. Debtor received her Chapter 7 discharge on December 1, 2022.[3]

On December 8, 2022, Trustee Rupp requested an order requiring Debtor to turnover $5,181 or the Audi vehicle to the estate.[4] Although the value of the estate's interest in the Audi as of the Petition Date was only $1,168,[5] Trustee Rupp demanded an additional $4,013,[6] refusing Debtor's attempts to negotiate payment of the $1,168 outside of the courtroom.[7] Trustee Rupp also requested an order requiring turnover of an additional $2,350 to the estate, despite his 11-03-2022 agreement with Debtor allowing her to make monthly payments of $50 per month until she receives her 2022 tax refund to pay the balance in full.[8]

---

[3]  Doc. #97, Order of Discharge.
[4]  Doc. #111, Motion to Turn Over Property.
[5]  Judicial Notice 2, p.8, ¶4 (As of the Petition Date, the Audi lien was $4,013). Doc. #100, p.3, Schedule A/B, #3.1 (As of the Petition Date, the Audi's value was $8,181); p.12, Schedule C, #2 (Debtor has applied a $3,000 exemption to the Audi). $8,181 - $4,013 - $3,000 = **$1,168**.
[6]  $5,181 - $1,168 = **$4,013**, the amount of the Audi lien as of the petition date (Judicial Notice 2, p.8, ¶4).
[7]  Judicial Notice 2, pp.11-12, ¶15.
[8]  Exhibit 1: Monthly Payment Plan Agreement.

On December 20, 2022, Trustee Rupp requested Court approval of an

agreement made with the Non-Debtor Spouse.[9] Therein, the Trustee proposes

gifting $12,118 of estate property to the Non-Debtor Spouse.[10] In exchange, the

Non-Debtor Spouse proposes gifting $4,013 of exempt funds used to satisfy the

Audi lien post-petition[11] to the bankruptcy estate. Like in *Villescas*,[12] the

Trustee fails to acknowledge that property traceable to an exempt source

maintains its exempt status and any waiver of that exemption is

unenforceable,[13] that the Subaru is property of the estate in its entirety,[14] or

that the Non-Debtor Spouse lacks standing to carry out any terms of the

agreement.[15]

Debtor counteroffers the Trustee's Motion for Turnover of the vehicle

with a payment negotiation of the $1,168 in equity the estate is entitled to.[16]

---

[9] Doc. #115, Motion for Approval of Settlement Agreement.
[10] The agreement proposes gifting the estranged spouse the two vehicles owned by the
estate in their entirety, free of liens or exemptions: Section II; Section IV;
Doc. #100, pp.3-4, Schedule A/B, #3.2 and #3.3. $7,383 + $4,735 = $12,118;
Doc. #115, p.9, ¶2: "Conveyance from Trustee."
[11] Sections I.D and I.E: "The Estate's Interest Excludes the $4,013 Post-Petition
Payments Made With Exempt Support Income."
[12] *In re Villescas*, 623 B.R. 223 (Bankr. D. Utah 2021).
[13] Section VI.B: "The Non-Debtor Spouse Cannot Waive the $4,013 78B-5-
505(1)(a)(vi),(vii) Exemption in the Audi Equity By Conveyance to the Estate."
[14] *See* Section II (The Subaru is Community Property) and Section III (Property of the
Estate) below.
[15] Section VI.: "The Settlement Agreement is Unenforceable and Prejudices the
Estate's Creditors.
[16] Section V.D: "Debtor Counters the Trustee's Motion to Turnover the Vehicle With a
Payment Negotiation of $1,168."

## LEGAL ARGUMENT

## I.   THE ESTATE IS ONLY ENTITLED TO $1,168 OF THE AUDI'S EQUITY.

The estate's interests in the Audi are limited to the Debtor's (and the Non-Debtor Spouse's) interests on the Petition Date (Section I.C). The $4,013 lien valid on the Petition Date (Section I.A) and the $3,000 vehicle exemption (Section I.B) are excluded from the estate's interests in the Audi. Any equity resulting from post-petition payments made with funds acquired post-petition (Section I.C) or funds traceable to an exempt source (Sections I.D and I.E) are also explicitly excluded from the estate's interests in the Audi by operation of law. Therefore, the estate is only entitled to $1,168 of the Audi's equity:

| | |
|---|---|
| Value As Of Petition Date[17] | $8,181 |
| Lien As Of Petition Date[18] | $4,013 |
| Exemption Amount[19] | $3,000 |
| **Estate's Total Interest** | **$1,168** |

---

[17] Doc. #100, p.3, Schedule A/B, #3.1 (11-10-2021, $8,181); Section III above.
[18] Judicial Notice 2, p.8, ¶4; Section IV.B and IV.C below.
[19] Doc. #100, p.12, Schedule C, #2 (U.C.A. §78B-5-506(3)(b), $3,000); Section III.B above.

## A.   The Estate's Interest Excludes The $4,013 Lien Valid as of the Petition Date.

The estate's interest in property is limited to the debtor's interests in property (and the community interests of the Debtor's spouse in property) <u>as of the Petition Date</u>,[20] which may not encompass all possible interests in a piece of property. Section §541(d) contemplates this occurrence when it provides that property "in which the debtor holds, as of the commencement of the case ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but <u>not to the extent of any equitable interest in such property that the debtor does not hold</u>."[21] Other parties' interests in property are not part of the bankruptcy estate. As an example, a secured creditor's interest in property as of the Petition Date is not property of the estate.[22]

In our case, the lien against the Audi as of the Petition Date – 11-10-2021 – totaled $4,013.[23] The validity of NFCU's secured claim against the Audi as of the Petition Date is not affected by its failure to file a proof of claim in the bankruptcy proceedings.[24]

---

[20] <u>11 U.S.C. §541(a)</u>.
[21] <u>11 U.S.C. §541(d)</u>.
[22] <u>Owen v. Owen</u>, 500 U.S. 305, 308-09 (1991): A mortgage holder's equitable interest in property as at the time of filing does not pass to the estate.
[23] Judicial Notice 2, p.8, ¶4.
[24] <u>11 USC §506(d)(2)</u>: "(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless- (2) such claim is not

### B.    The Estate's Interest Excludes the $3,000 Exemption.

As explained in the legislative history of 11 U.S.C. §522, "[u]nder ... [11 U.S.C. §] 541, all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate under this section. <u>Property may be exempted even if it is subject to a lien</u>, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of exemption."[25]

In our case, Debtor properly applied the $3,000 exemption for vehicles provided in the Utah Exemptions Act to the Audi.[26]

### C.    The Estate's Interest Excludes Post-Petition Funds/Assets.

The Petition Date[27] draws a crucial line of demarcation between what is property of the estate and what is not. (*Chernushin*[28] at <u>1269-1270</u>). Specifically, the phrase "as of the commencement of the case" places a "limitation ... on the reach of the bankruptcy estate" by "establish[ing] a clear-

---

an allowed secured claim due only to the failure of any entity to file a proof of such claim..."

[25] 11 U.S.C. §522: <u>Senate Report No. 95-989.</u>

[26] <u>Doc. #100</u>, p.12, Schedule C, #2 (<u>U.C.A. §78B-5-506(3)(b)</u>), $3,000).

[27] <u>11 U.S.C. §301(a)</u>: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."

[28] <u>*In re Chernushin*</u>, 911 F.3d 1265, <u>1269-70</u> (10th Cir. 2018): "We have emphasized § 541(a)(1) limits estate property to the debtor's interests as of the commencement of the case."

cut date after which property acquired by the debtor will normally not become

property of the bankruptcy estate."[29] As stated by the U.S. Supreme Court:

> "When a debtor files a Chapter 7 petition, his assets, with specified
> exemptions, are immediately transferred to a bankruptcy estate. §
> 541(a)(1). ... Crucially, however, a Chapter 7 estate does not include the
> wages a debtor earns or the assets he acquires after the bankruptcy
> filing. § 541(a)(1)." (*Harris*[30] at 1835).

In the current case, post-petition funds were used to pay the Audi lien.[31]

The value of those post-petition funds, regardless of form, are specifically

excluded from the bankruptcy estate.

### D.    Funds/Assets/Interests Traceable to an Exempt Source Retain The Exempt Character.

As articulated by Utah bankruptcy courts and state courts alike, Utah

construes exemption statutes <u>liberally in favor of the debtor</u>.[32] The Utah

Exemptions Act[33] provides that Debtor's right to receive child and spousal

---

[29] *Chernushin* at 1270.

[30] *Harris v. Viegelahn*, 575 U.S. 510 (2015).

[31] Proof of Claim No. 5, page 4 – NFCU Used Vehicle Loan Transaction History.

[32] *Russell M. Miller Co. v. Givan*, 325 P.2d 908, 909-10 (Utah 1958): Exemption
statutes are construed "liberally ... in favor of the debtor to protect him and his
family from hardship."
*In re Godfrey*, 386 B.R. 339, 341 (Bankr. D. Utah 2008): "[A]s a general proposition,
exemption laws must be liberally construed in favor of the claimant to effect their
humanitarian purposes."
*In re Neiheisel*, 32 B.R. 146, 167-68 (Bankr. D. Utah 1983): "When a Utah statute
grants an exemption, the Utah Supreme Court has consistently applied a liberal
construction in favor of debtors..."

[33] U.C.A. §78B-5-5.

support is exempt from execution.[34] Utah's exemption statutes provide that certain classes of exempt property, including Debtor's child and spousal support income at issue here, "remains exempt ... in any other form into which it is traceable" and recognize further that exempt property retains its exempt character if the property can be traced by "any other reasonable basis for tracing selected by the individual."[35]

In *Villescas*,[36] Trustee Rupp filed a Motion for Turnover[37] and an Objection to Exemption[38] of a Debtor's non-exempt property. The non-exempt property at issue was the debtor's car insurance proceeds traced to debtor's exempt vehicle[39] that was involved in a car accident.[40] The Court explained that just because "the [vehicle] changed form post-petition and became the Proceeds did not prevent the Debtors' exemption from carrying over to the Proceeds."[41]

---

[34] U.C.A. §78B-5-505(1)(a)(vi): "money or property received, and rights to receive money or property for child support;"
U.C.A. 78B-5-505(1)(a)(vii): "money or property received, and rights to receive money or property for alimony or separate maintenance ..."

[35] U.C.A. §78B-5-507(2), (3)(b).

[36] *In re Villescas*, 623 B.R. 223 (Bankr. D. Utah 2021).

[37] *Villescas* at 226.

[38] *Villescas* at 226-227.

[39] U.C.A. §78B-5-506(3)(b).

[40] *Villescas* at 225.

[41] *Villescas* at 235.

Therefore, the court overruled Trustee Rupp's Objection to Exemption[42] and

denied his Motion for Turnover.[43]

In *Smith*,[44] the Tenth Circuit BAP certified a question to the Utah

Supreme Court regarding the characterization of non-exempt property

traceable to exempt property; the non-exempt property at issue was the debtor's

tax return traced[45] to her exempt retirement income.[46] The Utah Supreme

Court explained that the "Utah Legislature made clear that money or property

may be converted into other forms and retain its exempt status" so long as it is

"reasonably traceable through the entire process."[47] The Court concluded that

the records and documents related to debtor's tax refund were reasonably

traceable.[48] Therefore, the Tenth Circuit BAP allowed debtor to exempt her tax

return proceeds.[49]

---

[42] *Villescas* at 239.

[43] *Villescas* at 240.

[44] *In re Smith*, 201 P.3d 1001, 2009 U.T. 3 (Utah 2009) ("*Smith*");
*In re Smith*, BAP No. UT-07-065 (B.A.P. 10th Cir. Feb. 24, 2009) ("*Smith 2*").

[45] *Smith* at ¶10-11.

[46] U.C.A. §78B-5-505(1)(a)(xiv).

[47] *Smith* at ¶14.

[48] *Smith* at ¶10.

[49] *Smith 2* at "IV. CONCLUSION".

### E.   The Estate's Interest Excludes the $4,013 Post-Petition Payments Made With Exempt Support Income.

Debtor's right to receive $1,890 in monthly support income became exempt from execution by creditors on 11-10-2021, her petition date:[50] Because the exempt support income was used to pay the Audi lien, the increased equity in the Audi maintains the exempt status of the support income and is protected from execution in this bankruptcy:

> U.C.A. §78B-5-505(1)(a)(vi): "An individual is entitled to an exemption of ... money or property received, and rights to receive money or property for **child support**;"

> U.C.A. §78B-5-505(1)(a)(vii): "An individual is entitled to an exemption of ... money or property received, and rights to receive money or property for **alimony or separate maintenance ...**"

> U.C.A. §78B-5-507(2): "Money or other property exempt under Subsection 78B-5-505(1)(a) ... (vi), (vii) ... remains exempt ... in any other form into which it is traceable.

The documents tracing Debtor's exempt support income as the source of funds used to satisfy the $4,013 Audi lien are crystal clear:

1. On 06-23-2021, Debtor's monthly support income was set to $1,890 monthly,[51] which was still active as of 12-22-2022.[52]

---

[50] Doc. #7, p.35: Schedule I, #8c "Family Support payments that you ... **regularly** receive. Include alimony, spousal support, child support... : **$1,890**."

[51] Judicial Notice 2, p.8, ¶3.

[52] Judicial Notice 2, p.10, ¶9.

14

2. On 11-10-2021, the Petition Date, NFCU's lien against the Audi was $4,013[53] with monthly payments of $506.85.[54]

3. On 12-07-2021, the Non-Debtor Spouse obtained a court order allowing him to deduct $506 monthly from Debtor's exempt child and spousal support income, which he used to pay the stayed NFCU car loan in satisfaction of the Audi lien.[55]

4. The California Department of Child Support Service's monthly statements show Debtor's monthly support income being reduced by $506 (1 car payment) some months,[56] and $1,012 (2 car payments) other months.[57]

---

[53] Judicial Notice 2, p.8, ¶4.
[54] Judicial Notice 2, p.8, ¶2.
[55] Judicial Notice 2, pp.8-9, ¶5.
[56] Judicial Notice 2, p.9, ¶6.
[57] Judicial Notice 2, p.9, ¶7.

## II.    THE SUBARU IS COMMUNITY PROPERTY.

Although the Non-Debtor Spouse has represented to this Court that the Subaru is his separate property (Section II.A), he has testified under the penalty of perjury multiple times that (1) the Subaru is not his separate property (Section II.B) and that (2) the date of separation was after the date the Subaru was purchased (Section II.E). Therefore, pursuant to California law (Section II.C), the Subaru is community property (Section II.D).

A spouse's claim that property acquired before separation is separate property must be proven by a "written transmutation agreement" between the spouses. (Section II.D). Because the Non-Debtor Spouse has failed to meet this burden of proof, the Subaru must be characterized as community property in the California Court and this Court as well:

> "In sum, we hold that the community property presumption in Family Code section 760 applies not only to dissolution actions but also to a dispute between one or both spouses and a bankruptcy trustee..." (*Brace*[58] at 935)

---

[58] *In re Brace* (2020) 9 Cal.5th 903.

## A.    The Non-Debtor Spouse's Representations to this Court.

When Non-Debtor Spouse Jacob Ruiz signed and executed the Settlement Agreement on 12-20-2022, he represented to this Court that the Subaru in his possession was his separate property:[59]

> "Mr. Ruiz disputes that the 2008 Subaru Forster is community property, and maintains that it is his separate property."

This allegation, *if true*, would prevent the Subaru from entering the bankruptcy estate by operation of 11 U.S.C. §541(a)(2),[60] keeping it safe from execution. This exclusion of the Subaru's $7,383[61] in equity also bolsters Trustee Rupp's *Kopexa*[62] arguments in favor of approving the Settlement Agreement[63] because it decreases the perceived potential monetary benefit to the estate. However, as outlined below, the Subaru is not his separate property.

## B.    The Non-Debtor Spouse Admitted Under Penalty of Perjury That the Subaru is Not His Separate Property.

On both 04-15-2019 and 05-28-2021, Non-Debtor Spouse Jacob Ruiz testified under penalty of perjury that the 2008 Subaru Forrester was not his

---

[59] Judicial Notice 2, p.11, ¶11; Doc. #115, p.8, ¶F and p.3, ¶6.
[60] 11 U.S.C. §541(a)(2): The bankruptcy estate includes "(a) The commencement of a case ... creates an estate .... comprised of ... (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case ..."
[61] Doc. #100, p.4, Schedule A/B, #3.3.
[62] *In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (B.A.P. 10th Cir. 1997).
[63] Doc. #115, pp.4-6, Memorandum of Law in Support.

separate property.[64] The Schedule of Assets and Debts (FL-142), on which he

made these disclosures,[65] are governed by the California law:

> California Family Code §2100(c): " ... a full and accurate disclosure of all
> assets and liabilities in which one or both parties have or may have an
> interest must be made ... regardless of the characterization as community
> or separate ... Moreover, each party has a continuing duty to
> immediately, fully, and accurately update and augment that disclosure to
> the extent there have been any material changes so that ... each party
> will have a full and complete knowledge of the relevant underlying facts."

Non-Debtor Spouse Jacob Ruiz has not updated or augmented his

Schedule of Assets and Debts since 05-28-2021.[66] Therefore, there have been no

changes to the community characterization of the Subaru he has attested to.

### C.    California Law Defines the Property Rights of Debtor and Non-Debtor Spouse.

"Property interests are created and defined by state law." (*Butner*[67] at

55). "Once that state law determination is made," courts must then "look to

federal bankruptcy law to resolve the extent to which that interest is property

of the estate." (*Marshall*[68] at 1255).

---

[64] Judicial Notice 2, p.10, ¶10.
[65] Judicial Notice 2, pp.40-53.
[66] Doc. #77, Judicial Notice 1, pp.45-65 (Kings County Superior Court, Case #19FL-0112 Docket).
[67] *Butner v. United States* (1979) 440 U.S. 48.
[68] *In re Marshall*, 550 F.3d 1251 (10th Cir. 2008).

When the property rights of the parties are put at issue, the court in a divorce action has jurisdiction to determine them. (*Shore*[69] at 679). In the current matter, Debtor's divorce proceedings commenced on 03-11-2019 in the State of California,[70] but the property and liabilities have not been divided.[71] Therefore, the State of California continues to hold jurisdiction over characterization of the property.

> California Family Code §2556: "In a proceeding for dissolution of marriage ... the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding."

When a federal right depends on the interpretation of state law, the federal courts must apply the interpretation of that law ascribed by the state's highest court. "Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State. This proposition, fundamental to our system of federalism, is applicable to procedural as well as substantive rules." (*Johnson*[72] at 916).

> "[T]he task of the federal court is not to reach its own judgment regarding the substance of the common law, but simply to 'ascertain and apply the

---

[69] *Shore v. Shore* (1954) 43 Cal.2d. 677.
[70] Doc. #77, Judicial Notice 1, p.6 ¶11.
[71] Doc. #77, Judicial Notice 1, p.7 ¶12.
[72] *Johnson v. Fankell*, 520 U.S. 911 (1997).

state law.' The federal court must defer to the most recent decisions of the state's highest court" (*Wankier*[73] at 866).

### D.     Absent A Written Agreement, Property Acquired By Married Persons Before the Date of Separation Is Community Property Regardless of Title.

In 2014, the California Supreme Court in *Valli*[74] held that absent a

written agreement, property acquired during marriage is community property

regardless of which spouse is listed as the owner:

> "Property that a spouse acquired during the marriage is community property (id., § 760)[75] unless it is (1) traceable to a separate property source (case citations omitted), (2) acquired by gift or bequest (Fam. Code, § 770,[76] subd. (a)(2)), or (3) earned or accumulated while the spouses are living **separate and apart** (id., § 771,[77] subd. (a)). A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence." (*Valli* at 1400 – some citations and quotes omitted)

> "Married persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community. A transmutation of property, however, 'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." (*Valli* at 1400 – citations omitted)

---

[73] *Wankier v. Crown Equipment Corp.*, 353 F.3d 862 (10th Cir. 2003).

[74] *In re Marriage of Valli* (2014) 58 Cal.4th 1396. ("*Valli*").

[75] California Family Code §760: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

[76] California Family Code §770.

[77] California Family Code §771.

"Much property acquired during marriage is in the name of one of the spouses, such as salaries, stock options, retirement benefits, and the like. Applying section 662[78] to all such property — and concluding that it is separate property unless shown to be otherwise by clear and convincing evidence — would largely nullify the presumption that property acquired during marriage is community. (*Valli* at 1411-1412).

"Future courts resolving disputes over how to characterize property acquired during the marriage in an action between the spouses should apply the community property statutes found in the Family Code[79] and not section 662." (*Valli* at 1414).

In *Brace*,[80] there was a conflict between a married couple and the Chapter 7 Trustee where only one spouse filed for bankruptcy. The Ninth Circuit posed a question to the California Supreme Court regarding the characterization of property in bankruptcy. *Brace* held that the characterization of property in a marital dissolution also applies in the context of a bankruptcy, and that the community estate is liable for the debts of one or both spouses:

"The Braces urge us to limit *Valli* to the context of marital dissolutions. But we see no basis in the text, purpose, or history of Family Code section 760[81] to confine *Valli*'s holding in this way. It would carve a major hole in the community property system to hold that Evidence Code section 662[82], a general statute that addresses the import of legal title—and not Family Code section 760, a statute that specifically addresses the characterization of property acquired during marriage—governs the

---

[78] California Evidence Code § 662: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

[79] California Family Code §760.

[80] *In re Brace* (2020) 9 Cal.5th 903. ("*Brace*").

[81] California Family Code § 760.

[82] California Evidence Code § 662.

characterization of property acquired during marriage for all purposes other than divorce." (*Brace* at 928)

"The community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgement for the debt." (*Brace* at 934)

"In sum, we hold that the community property presumption in Family Code section 760 applies not only to dissolution actions but also to a dispute between one or both spouses and a bankruptcy trustee, and that Evidence Code section 662 does not apply when it conflicts with the Family Code section 760 presumption." (*Brace* at 935)

### E.　The Subaru Was Purchased Before Debtor and the Non-Debtor Spouse's Date of Separation.

The Non-Debtor Spouse testified under the penalty of perjury multiple times that the date of separation was 12-26-2018,[83] but Debtor asserts the date of separation was 02-25-2019.[84] This conflict, however, is irrelevant because the Subaru was purchased on 12-14-2018,[85] which is before both of the alleged dates. Therefore, the Subaru is in fact community property.

---

[83] Judicial Notice 2, p.11, ¶13.
[84] Judicial Notice 2, p.11, ¶14.
[85] Judicial Notice 2, p.11, ¶12.

## III.   PROPERTY OF THE ESTATE

The Bankruptcy Code provides that when Debtor filed her individual bankruptcy case, all community assets of both spouses became property of the Chapter 7 estate, and California law provides that those assets are liable for the claims against Debtor in their entirety (Section III.A).  However, only property interests as of the Petition Date enter the estate; any assets, interests, equity, or property acquired post-petition are specifically excluded from Debtor's Chapter 7 estate (Section I.C). Additionally, any property interests properly exempted ceases to be property of the estate (Section I.B).

As such, property of the estate includes the Audi,[86] the Nissan,[87] and a portion of Debtor's 2021 tax return. The Subaru[88] is also property of the estate because it is community property as well (Section II).

### A.    All Community Property of the Debtor and the Non-Debtor Spouse Are Liable for the Claims Against Debtor.

11 U.S.C. §541(a): "The commencement of a case ... creates an estate ... comprised of ... (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is –

(B)  Liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

---

[86] Doc. #100, p.3, Schedule A/B, #3.1.
[87] Doc. #100, p.3, Schedule A/B, #3.2.
[88] Doc. #100, p.4, Schedule A/B, #3.3; Section II above.

23

<u>California Family Code §910</u>: "(a) ... the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.

(b) 'During marriage' ... does not include the period after the date of separation ... and before a judgment of dissolution of ... of the parties."

As outlined in <u>Section II.C</u> above, California law governs the property in Debtor and the Non-Debtor Spouse's community estate. "Under California law, the event which terminates liability of community property for community debts as well as debts of the other spouse is division of the community property" (*Mantle*[89] at <u>1085</u>). "For purposes of 541(a)(2), all community property not yet divided by a [California] state court <u>at the time of the bankruptcy filing</u> is property of the bankruptcy estate." (<u>*Id.*</u>).

The California Supreme Court holds that "the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively for his or her own personal benefit." (*Lezine*[90] at <u>64</u>)

On 11-10-2021, the Petition Date, the state court had not yet divided the community property.[91] Therefore, the community interests of both Debtor and

---

[89] <u>*In re Mantle*</u>, 153 F.3d 1082 (9th Cir. 1998).
[90] <u>*Lezine v. Security Pacific Fin. Services, Inc*</u>. 14 Cal.4th 56 (1996).
[91] <u>Doc. #77</u>, Judicial Notice, p.6 ¶11, p.7 ¶12, pp.46-65.

the Non-Debtor Spouse are property of the bankruptcy estate and are liable for

the claims against Debtor.

## IV.    VALUATION OF THE ESTATE'S INTEREST IN THE PROPERTY.

|  | Audi | Nissan | Subaru |
|---|---|---|---|
| Value As Of Petition Date | $8,181[92] | $4,735[93] | $7,383[94] |
| Lien As Of Petition Date | $4,013[95] | $0 | $0 |
| Exemption Amount | $3,000[96] | $0 | $0 |
| **Estate's Total Interest** | **$1,168** | **$4,735** | **$7,383** |

### A.    The Proper Date of Valuation is 11-10-2021.

11 U.S.C. §522(a)(2) defines the value of exempt property as the "fair

market value <u>as of the date of the filing of the petition</u>," and 11 U.S.C. §541(a)

defines the property of the estate as all "interests of the debtor in property <u>as</u>

<u>of the commencement of the case</u>." Additionally, the U.S. Supreme Court's

---

[92] <u>Doc. #100</u>, p.3, Schedule A/B, #3.1 (11-10-2021, $8,181).
[93] <u>Doc. #100</u>, p.3, Schedule A/B, #3.2 (11-10-2021, $4,735).
[94] <u>Doc. #100</u>, p.3, Schedule A/B, #3.3 (11-10-2021, $7,383).
[95] Judicial Notice 2, p.8, ¶4; <u>Section I.A</u>: Liens excluded from estate interests.
[96] <u>Doc. #100</u>, p.12, Schedule C, #2 (<u>U.C.A. §78B-5-506(3)(b)</u>, $3,000); Section I.B:
Exempted property excluded from estate interests.

opinion in *Harris*[97] and the Tenth Circuit's opinion in *Chernushin*[98] specifically exclude post-petition assets or earnings from Chapter 7 estates. Therefore, the proper date of valuation of the estate's interests in the vehicle is Petition Date: 11-10-2021.

> **B.    The Estate's Interest Excludes Valid Liens as of the Petition Date, Properly Applied Exemptions, Post-Petition Funds/Assets, And Equity Traceable to an Exempt Source.**

See Sections I.A (Liens), I.B (Exemptions), I.C (Post-Petition Assets), and I.D (Exempt Sources) above.

## V.    THE TRUSTEE'S MOTION FOR TURNOVER OF THE AUDI WILL NOT RESULT IN A MEANINGFUL DISTRIBUTION TO ESTATE CREDITORS.

> "For the Chapter 7 Trustee to prevail on his Motion for Turnover, the Proceeds must be property of the chapter 7 estate and the Debtors must be unable to exempt them. For the Debtor[] to prevail, the Proceeds must either be excluded from the chapter 7 estate or an exemption must apply to them." (*Villescas* at 227).

---

[97] *Harris v. Viegelahn*, 575 U.S. 510, 1835 (2015).

[98] *In re Chernushin*, 911 F.3d 1265, 1269-70 (10th Cir. 2018): "We have emphasized § 541(a)(1) limits estate property to the debtor's interests as of the commencement of the case."

## A.    The Estate's Interests In The Audi Is Only $1,168.

As explained in <u>Sections I</u> and <u>IV</u> above, after deducting the exemption[99] and the Petition Date lien[100] from the Audi's Petition Date value,[101] only **$1,168** in equity remains for the estate. As a reminder, the estate is not entitled to the increased equity caused by post-petition payments (<u>Section I.C</u>) or payments traceable to exempt funds (<u>Sections I.D</u> and <u>I.E</u>).

| Value As Of Petition Date | $8,181 |
| --- | --- |
| Lien As Of Petition Date | $4,013 |
| Exemption Amount | $3,000 |
| **Estate's Total Interest** | **$1,168** |

## B.    The Trustee Hired Counsel To Collect the $1,168 After Refusing to Settle With Debtor Outside of Court.

<u>11 U.S.C. §330(a)(4)(A)</u>: "the court shall not allow compensation for — ... (ii) services that were not — (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."

On 12-20-2022, Trustee Rupp received authorization from this Court to hire counsel to prosecute this matter[102] Again, this is after Trustee Rupp refused Debtor's attempt to negotiate the $1,186 on 12-07-2022.[103]

---

[99] <u>Section I.B</u>; <u>Doc. #100</u>, p.12, Schedule C, #2 (<u>U.C.A. §78B-5-506(3)(b)</u>, $3,000).
[100] <u>Section I.A</u>; Judicial Notice 2, p.8, ¶4; <u>Section IV.B</u> and <u>IV.C</u> below.
[101] <u>Doc. #100</u>, p.3, Schedule A/B, #3.1 (11-10-2021, $8,181); <u>Section III</u>.
[102] <u>Doc. #114</u>, Order to Employ.
[103] Judicial Notice 2, pp.11-12, ¶15; pp.100-105.

On the same date, Trustee Rupp requested Court approval of an agreement he made with the Non-Debtor Spouse,[104] gifting $12,118 of the estate's proper interests in property to the Non-Debtor Spouse in exchange for the Non-Debtor Spouse's gift of $4,013 of exempt funds to the bankruptcy estate, which is legally unenforceable.[105]

### C.　A Trustee is not Authorized to Administer an Asset That Will Not Result in a Meaningful Distribution to the Estate.

A chapter 7 trustee's duties are created by Congress through statute, and the Office of the United States Trustee has prepared the Handbook for Chapter 7 Trustees (the "Trustee Handbook"),[106] which directs trustees with respect to those duties. The two are complementary, with the statutes generally making broader pronouncements and the Trustee Handbook typically filling in much of the detail on the nuts-and-bolts of case administration. Section 704(a)(1) directs the trustee to "collect and reduce to money the property of the estate for which such trustee serves."[107] This mandate is carried out through §363(b),[108] which

---

[104] Doc. #115, Motion for Approval of Settlement Agreement.

[105] Section VI: "The Settlement Agreement is Unenforceable, Unjust, and Prejudices the Estate's Creditors."

[106] Handbook for Chapter 7 Trustees, (Effective October 1, 2012, Updated March 15, 2022), p.10 ("Page 1-2"): "[T]he trustee's primary statutory duties are set forth in part in section 704 of the Bankruptcy Code and are detailed more thoroughly in other parts of this Handbook."

[107] 11 U.S.C. §704(a)(1).

[108] 11 U.S.C. §363(b).

gives the trustee the authority to sell property of the estate. But there are

restrictions:

> "A trustee shall not administer an estate or an asset in an estate where
> the proceeds of liquidation will primarily benefit the trustee or the
> professionals, or unduly delay the resolution of the case. The trustee must
> be guided by this fundamental principle when acting as trustee.
> Accordingly, the trustee must consider whether sufficient funds will be
> generated to make a meaningful distribution to unsecured creditors,
> including unsecured priority creditors, before administering a case as an
> asset case." (Trustee Handbook, p.30, "Page 4-1").

> 11 U.S.C. §542(a): "... an entity ...in possession ... of property that the
> trustee may use, sell, or lease under section 363 of this title, or that the
> debtor may exempt under section 522 of this title, shall deliver to the
> trustee, and account for, such property or the value of such property,
> unless such property is of inconsequential value or benefit to the estate."

### D.    Debtor Counters Trustee's Motion to Turnover The Vehicle With a Payment Negotiation of $1,168.

After payment of legal fees, auctioneer fees, trustee commission, etc.,

there will not be much, if any, left of the **$1,168** to distribute to the estate's

creditors. Debtor still believes an out-of-court payment is in the best interests of

all involved.

## VI.  THE SETTLEMENT AGREEMENT IS UNENFORCEABLE, UNJUST, AND PREJUDICES THE ESTATE'S CREDITORS.

|  | Estate's Conveyance to the Non-Debtor Spouse[109] | Non-Debtor Spouse's Conveyance to the Estate | Net Benefit to the Estate |
|---|---|---|---|
| *What the Agreement Purports* | $12,118 | $4,013 | -$8,105 |
| *What is Enforceable In the Agreement* | $12,118 | $0 | -$12,118 |

The Settlement Agreement[110] has the net effect of giving away $12,118 in estate property to the Debtor's estranged spouse in exchange for nothing. The Non-Debtor Spouse cannot perform any terms of the agreement. In the agreement, the Non-Debtor Spouse proposes conveying $4,013 of exempt funds used to satisfy the Audi lien post-petition[111] to the estate in exchange for receiving two vehicles worth $12,118 from the bankruptcy estate.

However, the Non-Debtor Spouse cannot convey anything of value to the estate. The estate already owns his community interests in the Audi (Section VI.A), and his attempt to convey $4,013 in exempt property to the estate is unenforceable under both Federal and Utah law (Section VI.B).

---

[109] The agreement proposes gifting the estranged spouse the two vehicles owned by the estate in their entirety, free of liens or exemptions: Section II; Section IV; Doc. #100, pp.3-4, Schedule A/B, #3.2 and #3.3. $7,383 + $4,735 = $12,118; Doc. #115, p.9, ¶2: "Conveyance from Trustee."
[110] Doc. #115, Motion for Approval of Settlement Agreement.
[111] Sections I.D and I.E.

**A.    The Non-Debtor Spouse Cannot Convey to the Estate That Which The Estate Already Owns – His Interests In The Audi.**

In the Settlement Agreement,[112] the Non-Debtor Spouse purports to convey to the estate his property interests or claims related the Audi.[113] However, immediately upon the filing of Debtor's bankruptcy, all community interests of both spouses became property of the estate.[114] The Non-Debtor Spouse cannot transfer to the estate that which the estate already owns:

> "**3.** Mr. Ruiz transfers, conveys, and assigns to Trustee any and all property interest or claims he holds regarding the Audi, including, but not limited to any and all community property interests he currently holds with respect to the Audi. ..."[115]

**B.    The Non-Debtor Spouse Cannot Waive the $4,013 78B-5-505(1)(a)(vi),(vii) Exemption in the Audi Equity By Conveyance to the Estate.**

In the Settlement Agreement,[116] the Non-Debtor Spouse Jacob Ruiz purports to have standing to convey to the estate the equity in the Audi traceable to the $4,013 of Debtor's exempt child and spousal support income:[117]

> "**G.** Before and after the Petition Date, Mr. Ruiz continued to make payments to NFCU on the loan against the Audi. Since the filing of

---

[112] Doc. #115.
[113] Judicial Notice 2, pp.9-10, ¶8.
[114] Section III above; 11 U.S.C. §541(a)(2).
[115] Doc. #115, p.9, #3.
[116] Doc. #115.
[117] Judicial Notice 2, pp.9-10, ¶8.

Debtor's chapter 7 he has paid off the petition date $4,013.00 balance of the NFCU car loan."[118]

"**3.** ... Mr. Ruiz also transfers to Trustee any and all property interest, claims, rights, equities or any other benefit arising from any and all payments made by Mr. Ruiz on the NFCU car loan secured by the Audi, including, through not limited to, the post-petition Audi Loan Payments ... Any and all claims, rights and benefits of or equities arising from the Audi Loan Payments are meant to be for the benefit of the bankruptcy estate in the amount of no less than $4,013.00."[119]

However, As outlined in Sections I.D and I.E above, the $4,013 post-petition increase in the Audi's equity is <u>exempt</u> because it is traceable to the Debtor's exempt support income. Waiving the §78B-5-505(1)(a)(vi) and (vii) exemption in the Audi equity by conveying to the Trustee for administration is unenforceable under both Utah and Federal Law:

> 11 U.S.C. §522(e). A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section."

> U.C.A. §78B-5-509: "A waiver of exemptions executed in favor of an unsecured creditor before levy on an individual's property is unenforceable."

---

[118] Doc. #115, p.11, #G.
[119] Doc. #115, p.11, #3.

# CONCLUSION

For the reasons set forth herein, Debtor respectfully requests an order

denying the Trustee's 12-08-2022 *Motion to Turn Over Property*,[120] an order

denying the Trustee's 12-20-2022 *Motion to Approve Settlement,*[121] and any

other relief as this Court deems just and proper.

Dated 12-25-2022

/s/

Bianca Kaylene Ruiz
*Self-Represented Debtor*

---

[120] Doc. #111.
[121] Doc. #115.

 Gmail

Bianca Ruiz <biancakayleneruiz@gmail.com>

## Re: 21-24823 Ruiz, Bianca

1 message

**Bianca Ruiz** <biancakayleneruiz@gmail.com>
To: Stephen Rupp <SRupp@mbt-law.com>

Fri, Nov 4, 2022 at 3:30 PM

HI,

I set up an auto-pay for the $50 per month.

On Thu, Nov 3, 2022 at 3:41 PM Stephen Rupp <SRupp@mbt-law.com> wrote:
>
> It's not necessary to come in and meet. We can negotiate by email. The problem with the TSP is if and when you'll get it. It seems you've been trying for 3 years.
> Perhaps we can agree to $100 per month payments with a balloon payment on 3/1/23? That will give you opportunity to use any 2022 tax refunds. Any agreement will need be in writing. Any default will result in a money judgment for the balance owing at time of default and denial/revocation of discharge.
> Following today's conversation, I'll agree to $50 per month payments. If you make $50 per month payments for November, December, January and February, you'll owe $2,200 on March 1, 2023.
> Please consider it.
>
> Stephen W. Rupp
> McKay, Burton & Thurman
> 15 West South Temple
> Suite 1000
> Salt Lake City, Utah 84101
> (801)521-4135
> (801)521-4252 (fax)
> email: srupp@mbt-law.com

**36**

Bianca Kaylene Ruiz
*Self-Represented Debtor*
1353 West Bison Drive
Riverton, Utah 84065
808-250-3396
biancakayleneruiz@gmail.com



FILED US Bankruptcy Court-UT
DEC 27 2022 AM 11:21

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy No. 21-24823 |
|---|---|
| BIANCA KAYLENE RUIZ | Chapter 7 |
| Debtor. | Judge William T. Thurman |

## CERTIFICATE OF SERVICE

I hereby certify that on **12-25-2022**, I, Bianca Kaylene Ruiz, served a true

and correct copy of the **RESPONSE AND OBJECTIONS TO TRUSTEE'S:**

**(1) MOTION TO APPROVE SETTLEMENT, AND (2) MOTION TO TURN**

**OVER PROPERTY** to the parties below by e-mail or first-class mail:

Stephen R. Rupp                     United States Trustee
Chapter 7 Trustee                   USTPRegion19.SK.ECF@usdoj.gov
rupptrustee@mbt-law.com

Jacob Ruiz                          Navy Federal Credit Union
3005 Bent Oak Road                  PO Box 3000
Pensacola, FL 32526                 Merrifield, VA 22119

Dated 12-25-2022          /s/

                          Bianca Kaylene Ruiz
                          *Self-Represented Debtor*